**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| KAMIL WILKINSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FUTUREFUEL CORP., TOM MCKINLAY, and ROSE M. SPARKS,<br><br>Defendants. | Case No. 4:24-cv-00881-MTS<br><br>**SHEHZAD VIRANI AND SONERI INVESTMENTS INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL AND LIAISON COUNSEL** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND................................................................................................... 2

ARGUMENT ........................................................................................................................... 6

I.    MOVANTS ARE ENTITLED TO BE APPOINTED LEAD PLAINTIFFS FOR
      THE CLASS ................................................................................................................ 6

      A.    The PSLRA Standard For Appointing Lead Plaintiff................................................ 6

      B.    Under the PSLRA, Movants Should be Appointed Lead Plaintiffs............................ 7

            1.    Movants Filed a Timely Motion ................................................................. 7

            2.    Movants Have the Largest Financial Interest in the Relief Sought by
                  the Class......................................................................................................... 8

            3.    Movants Meet Rule 23's Typicality and Adequacy Requirements ............ 9

II.   MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
      AND UNGLESBY & CROMPTON AS LIAISON COUNSEL SHOULD BE
      APPROVED ............................................................................................................... 11

CONCLUSION....................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Blackmoss Invs., Inc. v. ACA Cap. Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ..................................................................................11

*Erickson v. Hutchinson Tech. Inc.*,
   No. 15-cv-4261, 2016 WL 8199314 (D. Minn. Apr. 1, 2016)..................................................8

*Espinoza v. Whiting*,
   No. 4:12cv1711 SNLJ, 2013 WL 171850 (E.D. Mo. Jan. 16, 2013) ......................................9

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................8, 9

*In re GE Sec. Litig.*,
   No. 09 Civ.1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ................................8, 10

*In re GenesisIntermedia, Inc. Sec. Litig.*,
   232 F.R.D. 321 (D. Minn. 2005).................................................................................10

*Horowitz v. SunEdison, Inc.*,
   No. 4:15 CV 1769 RWS, 2016 WL 1161600 (E.D. Mo. Mar. 24, 2016).........................6, 8, 9

*Kops v. NVE Corp.*,
   No. Civ.06-574(MJD/JJG), 2006 WL 2035508 (D. Minn. July 19, 2006)......................8, 9, 10

*Mart v. Tactile Sys. Tech., Inc.*,
   No. 20-CV-2074, 2021 WL 321624 (D. Minn. Feb. 1, 2021) ..............................................8, 9

*Mas v. KV Pharm. Co.*,
   No. 4:08-CV-1859 (CEJ), 2009 WL 1011506 (E.D. Mo. Apr. 15, 2009) .............................6, 7

*Minneapolis Firefighters' Relief Assoc. v. MEMC Elec. Materials, Inc.*,
   No. 4:08-CV-1411 (CEJ), 2008 WL 5233106 (E.D. Mo. Dec. 12, 2008)...................6, 7, 9, 10

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)...............................................................................11, 12

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)..................................................................................8, 9

*W. Wash. Laborers-Emps. Pension Tr. v. Panera Bread Co.*,
   No. 4:09CV00120 ERW, 2008 WL 2559431 (E.D. Mo. June 23, 2008) .................................7

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) ................................................................................................13

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4) ...........................................................................................10

Anne Cullen,
   More Judges Are Demanding Diversity Among Class Counsel, Law360 (July
   16, 2020) ..........................................................................................................14

Ralph Chapoco,
   Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg
   Law (July 30, 2020) .........................................................................................14

Shehzad Virani ("Virani") and Soneri Investments Inc. ("Soneri," together with Virani, "Movants") respectfully submit this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of their motion for the entry of an order appointing Movants as Lead Plaintiffs and approving Movants' selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and the law firm of Unglesby & Crompton as Liaison Counsel.[1]

## PRELIMINARY STATEMENT

The Action presently pending before this Court is brought on behalf of persons or entities who purchased or otherwise acquired publicly traded FutureFuel Corp. ("FutureFuel" or the "Company," together with Tom McKinlay and Rose M. Sparks, the "Defendants") securities between August 10, 2023 and May 10, 2024, inclusive (the "Class Period"), which seeks to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Rule 10b-5 promulgated thereunder.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1]     Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of R. Seth Crompton filed herewith.

With losses of $137,956.39, Movants, to the best of counsel's knowledge, have the largest financial interest in the litigation of any movant. Movants also satisfy Rule 23's typicality and adequacy requirements. Movants' claims are typical of the Class's claims because they suffered losses on their FutureFuel investment as a result of Defendants' false and misleading statements.  Further, Movants have no conflict with the Class and will adequately protect the Class's interests given their significant stake in the litigation and their conduct to date in prosecuting the litigation, including their submission of the requisite certifications and selection of experienced class counsel.  Accordingly, Movants are the presumptive Lead Plaintiffs.

Lastly, if appointed Lead Plaintiff, Movants are entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movants' motion should be granted in its entirety.

## FACTUAL BACKGROUND[2]

FutureFuel describes itself as "a Delaware corporation, and, through its wholly-owned subsidiary, FutureFuel Chemical Company, manufactures diversified chemical products, bio-based fuel products, and bio-based specialty chemical products." ¶ 7.

FutureFuel is incorporated in Delaware and its principal executive offices are located at 8235 Forsyth Blvd., Suite 400, St. Louis, Missouri 63105. ¶ 8. The Company's common stock

---

[2]    All references to "¶ __" are to the Complaint for Violations of the Federal Securities Laws, ECF No. 1.

2

trades on the New York Stock Exchange under the ticker symbol "FF." *Id.*

During the Class Period, Defendants made statements that were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. ¶ 31. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) FutureFuel did not have adequate internal controls; (2) FutureFuel's financial statements were misstated; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times. *Id.*

On May 10, 2024, the Company filed with the SEC a Current Report on Form 8-K. ¶ 32. It revealed the following:

> FutureFuel Corp. (the "Company") has identified ***a correction required to be made to its historical consolidated statements of cash flows for the six months ended June 30, 2023, nine months ended September 30, 2023 and year ended December 31, 2023***. The correction relates solely to the reported amount of "Other assets" and the resulting total amount of "Net Cash Flows From Operating Activities" and the reported amount of "Collateralization of derivative instruments" and the resulting total amount of "Net Cash Flows from Investing Activities" in the respective consolidated statements of cash flows for the six months ended June 30, 2023, nine months ended September 30, 2023 and year ended December 31, 2023 (collectively, the "Correction"). The Correction does not impact the Company's overall cash position, its consolidated balance sheets, its consolidated statements of operations and comprehensive income (loss), or its consolidated statements of stockholders' equity as of or for the periods ended June 30, 2023, September 30, 2023 or December 31, 2023.
>
> * * *
>
> On May 8, 2024, management and the audit committee of the board of directors of the Company concluded that, as a result of the Correction and in accordance with, Staff Accounting Bulletin No. 99, "Materiality," the consolidated statements of cash flows included in the Company's previously issued unaudited financial statements in the Quarterly Reports on Form 10-Q for the periods ended June 30, 2023, and September 30, 2023, and the previously issued audited Consolidated Statement of Cash Flows on Form 10-K for the year ended December 31, 2023, were materially misstated and should no longer be relied upon due to the

3

Correction. In addition, any Company communications or presentations relating to the Correction should no longer be relied upon.

The Company will report the restatement in an amendment to each of the Quarterly Reports on Form 10-Q for the quarters ended June 30, 2023, and September 30, 2023 (the "Form 10-Q/As"), and to the Annual Report on Form 10-K for the year ended December 31, 2023 (the "Form 10-K/A"). The financial information that has been previously filed or otherwise reported for these periods with respect to the Correction will be superseded by the information to be included in the consolidated financial statements in the Form 10-Q/As and Form 10-K/A.

***In addition, the Company's management has concluded that, as a result of the Correction, a material weakness existed in the Company's internal control over financial reporting as of June 30, 2023, September 30, 2023, and December 31, 2023, and that, because of this material weakness, the Company's disclosure controls and procedures were not effective as of June 30, 2023, September 30, 2023, and December 31, 2023***. The Company's remediation plan with respect to such material weakness will be described in more detail in the Company's Form 10-Q/As and Form 10-K/A.

The Company's management and audit committee of the board of directors discussed the matters disclosed in this Item 4.02 with its independent registered public accounting firm, RSM US LLP.

*Id*.

On May 10, 2024, the Company filed with the SEC its amended 2Q23 and 3Q23 Reports on Form 10-Q/A, and its amended 2023 Annual Report on Form 10-K/A. ¶ 34.

The amended 2Q23 and 3Q23 Reports contained restated financial figures (¶¶ 35, 36) and the amended 2023 Annual Report also contained restated financial figures (¶ 38) and the following disclosure regarding the Company's internal controls:

***We have identified a material weakness in our internal control over financial reporting as of December 31, 2023, September 30, 2023 and June 30, 2023, and continuing as of the date hereof which was correctly presented but had not been fully remediated, that resulted in a restatement of certain of our statements of cash flows. If we are not able to remediate this material weakness or otherwise fail to maintain effective internal control over financial reporting, we might not be able to report our financial results accurately or prevent fraud*; in that case, *our stockholders could lose confidence in our financial reporting, which would harm our business and could negatively impact the value of our stock.***

4

Effective internal controls are necessary for us to provide reliable financial reports and prevent fraud. The process of maintaining our internal controls may be expensive, and time consuming, and may require significant attention from management. As disclosed in this Amendment No. 1, we have identified a material weakness in our internal control over financial reporting, which existed as of December 31, 2023, September 30, 2023 and June 30, 2023. This error was the result of review controls of the cash flow statement which did not operate as designed and as such resulted in these errors. The Company has determined that the error did not have an impact on the Company's overall cash position, its consolidated balance sheets, its consolidated statements of income and comprehensive income, or its consolidated statement of changes in stockholders' equity as previously reported.

This material weakness resulted in the errors described in the Explanatory Note and Background of the Restatement. We have commenced efforts to remediate the material weakness as described in more detail in Part II, Item 9A. Controls and Procedures in this Amendment No. 1. However, this material weakness will not be considered remediated until the controls operate for a sufficient period of time and management has concluded, through testing, that these controls operate effectively. Our efforts to remediate this material weakness may be time consuming and costly. We cannot provide assurance that such efforts will ultimately have the intended effect. If we fail to remediate the existing material weakness or we or our independent registered public accounting firm discover additional material weaknesses, the value of our stock and our business could be harmed. As a result of the material weakness and the restatement of certain of our statements of cash flows, we may face litigation or regulatory investigations that could have a material adverse effect on the Company and its business and results of operations.

Further, because of its inherent limitations, internal control over financial reporting may not prevent or detect fraud or misstatements. Failure to implement required new or improved controls, or difficulties encountered in their implementation, could harm our results of operations or cause us to fail to meet our reporting obligations.

¶ 37.

On this news, the price of FutureFuel stock declined by $0.09, or 1.6%, to close at $5.50 on May 10, 2024. ¶ 39. It then fell a further $0.47, or 8.54%, to close at $5.03 on May 13, 2024. *Id.* It declined by a further $0.06, or 1.19%, to close at $4.97 on May 14. 2024. *Id.*

Through the Action, Movants seek to recover for themselves and absent class members

the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

**I.   MOVANTS ARE ENTITLED TO BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS**

**A.   The PSLRA Standard For Appointing Lead Plaintiff**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Horowitz v. SunEdison, Inc.*, No. 4:15 CV 1769 RWS, 2016 WL 1161600, at *2 (E.D. Mo. Mar. 24, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Minneapolis Firefighters' Relief Assoc. v. MEMC Elec. Materials, Inc.*, No. 4:08-CV-1411 (CEJ), 2008 WL 5233106, at *1 (E.D. Mo. Dec. 12, 2008); *Horowitz*, 2016 WL 1161600, at *1 (same); *Mas v. KV Pharm. Co.*, No. 4:08-CV-1859

6

(CEJ), 2009 WL 1011506, at *1-2 (E.D. Mo. Apr. 15, 2009), *as amended* Apr. 28, 2009 (describing the PSLRA's process for determining the "most adequate plaintiff").

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also MEMC*, 2008 WL 5233106, at *2; *Mas*, 2009 WL 1011506, at *2.

**B.**      **Under the PSLRA, Movants Should be Appointed Lead Plaintiffs**

As discussed below, Movants should be appointed Lead Plaintiffs because all of the PSLRA's procedural hurdles have been satisfied, Movants hold the largest financial interest of any movant, and Movants otherwise satisfy Rule 23's typicality and adequacy requirements.

**1.**      **Movants Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing.  15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Kamil Wilkinson published notice of the lead plaintiff deadline via *Business Wire* on June 24, 2024. *See* Ex. A; *see also W. Wash. Laborers-Emps. Pension Tr. v. Panera Bread Co.*, No. 4:09CV00120 ERW, 2008 WL 2559431, at *1 (E.D. Mo. June 23, 2008) (finding publication in *Business Wire* sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before August 23, 2024. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Movants' motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movants timely signed and submitted the requisite certifications, identifying all of their relevant FutureFuel trades

during the Class Period, and detailing Movants' suitability to serve as Lead Plaintiffs in this case. *See* Ex. B.  The PSLRA's procedural requirements have therefore been met**.**

### 2. Movants Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Horowtiz*, 2016 WL 1161600, at *3; *Kops v. NVE Corp.*, No. Civ.06-574(MJD/JJG), 2006 WL 2035508, at *3 (D. Minn. July 19, 2006); *Mart v. Tactile Sys. Tech., Inc.*, No. 20-CV-2074 (NEB/BRT), 2021 WL 321624, at *1 (D. Minn. Feb. 1, 2021); *Erickson v. Hutchinson Tech. Inc.*, No. 15-cv-4261 (DSD/LIB), 2016 WL 8199314, at *4 (D. Minn. Apr. 1, 2016), R. & R. *adopted by* 2016 WL 8200934 (D. Minn. Apr. 20, 2016); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re GE Sec. Litig.*, No. 09 Civ.1951(DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Horowtiz*, 2016 WL 1161600, at *3; *Erickson*, 2016 WL 8199314, at *7; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

8

Overall, during the Class Period, Movants purchased 47,075 net and 47,075 total FutureFuel shares, expended $369,869.10 in net funds and suffered losses of $137,956.39 attributable to the fraud. *See* Ex. C. Movants are presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

> **3.  Movants Meet Rule 23's Typicality and Adequacy Requirements**

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Espinoza v. Whiting*, No. 4:12cv1711 SNLJ, 2013 WL 171850, at *3 (E.D. Mo. Jan. 16, 2013); *MEMC*, 2008 WL 5233106, at *1; *Horowtiz*, 2016 WL 1161600, at *4; *Kops*, 2006 WL 2035508, at *5; *see also Mart*, 2021 WL 321624, at *2 ("As for the [Rule 23] requirement, [movant] is entitled to lead plaintiff status so long as it satisfies the typicality and adequacy requirements.").

Typicality is established where each class member's claim "arises from the same course of events or are based on the same legal theories as the claims of all the class members." *Kops*, 2006 WL 2035508, at *6 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

Movants' claims are clearly typical of the Class's claims. Movants purchased FutureFuel common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Defendants under the federal securities laws. Because the factual and legal bases of Movants' claims are similar to

those of the Class's claims, Movants necessarily satisfy the typicality requirement. *See Kops*, 2006 WL 2035508, at *6 (finding movants typical where "they allege that they purchased NVE stock during the Class Period at prices artificially inflated by false and misleading statements issued by Defendants and were damaged by that fraud when the truth was disclosed and the stock price fell.").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See In re GenesisIntermedia, Inc. Sec. Litig.*, 232 F.R.D. 321, 330 (D. Minn. 2005) ("To satisfy the adequacy requirement, Plaintiffs must show that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

Movant Virani is moving in conjunction with Movant Soneri, a company he owns and for which he serves as President, which also invested in FutureFuel stock.  Movant Virani is submitting a PSLRA Certification listing his individual transactions and a separate PSLRA Certification for Movant Soneri listing Soneri's transactions.  As evidenced by the representations in Virani's personal certification and the certification of Soneri, *see* Ex. B, Movants' interests are perfectly aligned with—and by no means antagonistic to—the Class. *See MEMC*, 2008 WL 5233106, at *2 (movant's certification evidenced adequacy to serve as lead

10

plaintiff); *see also Blackmoss Invs., Inc. v. ACA Cap. Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (same).  Contemporaneously with the filing of the instant motion, Movant Virani has submitted a Declaration with additional information about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. Ex. D. Movant Virani attended college and graduated with a bachelor's degree in commerce. *Id.* at ¶ 3. He is the sole proprietor of a used car business and owns a gas station and rental properties. *Id.* at ¶ 4.  Movant Virani is also the owner and president of Soneri Investments Inc. *Id.* at ¶ 5. He has been investing for over four years, managing his own investments. *Id*. at ¶ 6.

Movants have also selected and retained highly competent counsel to litigate the claims on behalf of themselves and the Class.  As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See* Ex. E.  Consequently, Movants are more than adequate to represent the Class and have every incentive to maximize the Class's recovery.

In light of the foregoing, Movants respectfully submit that they are the presumptive Lead Plaintiffs and should be appointed Lead Plaintiffs for the Action.

## II.    MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND UNGLESBY & CROMPTON AS LIAISON COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movants have selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d

11

390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (where, as sole lead counsel, the firm obtained final approval of $19.5 million settlement); *In re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (E.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $13.95 million settlement); *Lowthorp v. Mesa Air Grp., Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the

12

Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the  Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtaining a recovery of more than $930 million for the benefit of the Company, and negotiating important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel and recovering a $5.5 million settlement); *In re Olsten Corp. Sec. Litig*., No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, acting as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Johnson v. Luminar Techs., Inc.*, No. 6:23-cv-982-PGB-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *Kain v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (appointed sole lead counsel for the class); *Murphy v. Argo Blockchain plc*, No. 1:23-cv-00572-NRM-SJB (E.D.N.Y.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class; and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[3] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[4] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently,

---

[3]    *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[4]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

Finally, Movants' choice of liaison counsel, the Clayton based law firm Unglesby & Crompton, specializes in class action litigation. This experience includes securities litigation in this Court, as well as class actions in the areas of finance, anti-trust, insurance, consumer protection, defective products, and environmental damage across the country. A copy of the curriculum vitae of R. Seth Crompton is attached hereto as Exhibit G.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (1) appoint them as Lead Plaintiffs; (2) approve their selection of the Faruqi Firm as Lead Counsel and Unglesby & Crompton as Liaison Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

Dated:  August 23, 2024                                    Respectfully submitted,

By:     */s/ R. Seth Crompton*
        R. Seth Crompton #57448MO
        **UNGLESBY & CROMPTON**
        8909 Ladue Road
        Clayton, Missouri 63124
        Phone: (504) 345-1390
        Facsimile: (504) 324-0835
        E-mail: seth@ucjustice.com

        *Attorneys for [Proposed] Lead Plaintiffs*
        *Shehzad Virani and Soneri Investments Inc.*
        *and [Proposed] Liaison Counsel for the*
        *putative Class*

        James M. Wilson, Jr. (*pro hac vice*
        forthcoming)

15

**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice*
forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiffs*
*Shehzad Virani and Soneri Investments Inc.*
*and [Proposed] Lead Counsel for the*
*putative Class*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 23, 2024, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

By:   */s/ R. Seth Crompton*
R. Seth Crompton

*Attorneys for [Proposed] Lead Plaintiffs*
*Shehzad Virani and Soneri Investments Inc.*
*and [Proposed] Liaison Counsel for the*
*putative Class*